# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Appeal No. 04-2279 |
| ) | (On limited remand) |
| ) | |
| v. ) | |
| ) | No. 03 CR 768-1 |
| SERGIO CHICHITZ-MARTIN ) | |
| ) | Judge Ruben Castillo |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Sergio Chichitz Martin ("Martin"), the defendant in this drug case, appealed to the Seventh Circuit to have his sentence reduced via new opportunities provided by *United States v. Booker*, 543 U.S. 220 (2005). On May 5, 2004, this Court sentenced Martin to a total sentence of 135 months followed by five years of supervised release. Seven months later, on January 12, 2005, the Supreme Court dramatically changed the world of federal sentencing in its *Booker* decision, and each Circuit has since struggled to determine how to apply *Booker* to cases pending on appeal. In *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), the Seventh Circuit determined that all cases pending on appeal would generally be remanded back to the district court for reevaluation in light of *Booker*'s determination that the Sentencing Guidelines were no longer binding and mandatory.

On May 17, 2005, the Seventh Circuit ordered a limited remand to this Court pursuant to *Paladino* for proceedings to determine whether this Court would have imposed a different sentence in this case if allowed to re-sentence. This Court followed the suggested *Paladino* procedure and requested briefing on this issue from the parties. This procedure requires a district judge to attempt to go back in history to the initial sentencing hearings for all affected defendants. After careful

evaluation of the parties' submissions, the sentencing transcript and the pre-sentence reports, this Court has decided to hew to its original sentence for the reasons set forth herein.

## RELEVANT FACTS

On August 7, 2003, Martin and two co-defendants were charged in a criminal complaint alleging that they knowingly and intentionally possessed with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846. (R. 1, Compl.) On October 3, 2003, each defendant was indicted for conspiring to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and attempting to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Two). (R. 20.)

On January 29, 2004, Martin entered into a written plea agreement with the government and pleaded guilty to Count One of the Indictment. (R. 47.) On May 5, 2004, after overruling Martin's written objections to a Presentence Report ("PSR") prepared by the United States Probation Officer ("USPO") assigned to the case, this Court sentenced Martin to 135 months in the custody of the Bureau of Prisons, five years of supervised release, and a $100 special assessment. (R. 63.) On May 17, 2004, Martin timely filed a notice of appeal. (R. 66.)

In his written plea agreement, Martin admitted the following facts: On or about August 6, 2003, he arrived at a hotel in Chicago, Illinois, with two co-conspirators for the purpose of receiving approximately eighteen kilograms of cocaine from another individual. (R. 47 at 3.) Unbeknownst to Martin, the individual supposedly delivering the cocaine to him and his co-conspirators had previously been arrested in Arizona and had agreed to work as a confidential source ("CS") with the U.S. Drug Enforcement Administration ("DEA"). (*Id.*) Martin and his first co-conspirator

proceeded to the CS's hotel room, and the second co-conspirator remained in the parking lot of the hotel. (*Id.*) After Martin and the CS discussed the price the CS would be paid for transporting the cocaine, Martin's co-conspirator handed Martin $10,000, which Martin then handed to the CS. (*Id.*) Martin then took from a table in the CS's hotel room the keys to a 2001 Chevrolet Impala, which both Martin and his co-conspirator believed contained eighteen kilograms of cocaine. Id.

Martin and his first co-conspirator then proceeded to the hotel parking lot where the Impala was parked, and Martin handed the keys to his second co-conspirator. (*Id.*) Martin's second co-conspirator then drove the Impala out of the parking lot; Martin and the first co-conspirator left in another car, intending to meet up with the second co-conspirator and the cocaine at another location. (*Id.*)

In his plea agreement, Martin disagreed with the government that he was a leader/organizer of the criminal activity pursuant to USSG § 3B1.1(c). (R.47 at 4.)

After Martin pleaded guilty, the USPO prepared a PSR in which she concluded that Martin was a leader/organizer of the criminal activity pursuant to USSG § 3B1.1(c). In making the conclusion, the USPO relied on the following facts: (1) Martin was charged along with two other defendants in the drug conspiracy; (2) Martin was the individual in the conspiracy who both organized and made decisions regarding the drug transaction; (3) Martin directed his co-conspirators as to how to proceed with the drug transaction; (4) Martin advised one of his co-conspirators that many more drug transactions were planned in the future and that the price per kilogram of cocaine would be increased for future shipments; (5) It was Martin's job to ensure that the cocaine arrived safely in Chicago and was transferred to another location; and (6) One of Martin's co-conspirators told agents that he was being groomed by Martin to take over Martin's role in the organization.

-3-

On the day before his sentencing, Martin filed objections to the PSR. (R. 60.) In the objections, Martin stated that the USPO should not have found that the two-level leader/organizer adjustment applied because he was just the "contact person" for the drug organization in Chicago. (*Id.* at 3-5.) At the sentencing hearing the following day, Martin made the same argument. This Court, however, rejected the argument and ruled that Martin qualified for the two-level leader/organizer adjustment pursuant to USSG § 3B1.1(c). (R. 85-2 at 5.)

In finding that the leader/organizer adjustment should be imposed, this Court adopted the facts laid out in the PSR. This court also expressly rejected Martin's argument that he was just the contact person in Chicago.

| Defense Counsel: | Well, Judge, I don't think he's controlling the entire transaction. This defendant's function within the organization was to be the contact person in Chicago, and |
|---|---|
| The Court: | But he's doing more than contacting. If he's taking car keys, making discussions about the price, indicating his disappointment – let me just say this: Your objection is overruled. |

(R. 85-2 at 5.) Additionally, this Court indicated that it was strongly persuaded by the admissions in the plea agreement that Martin was a leader/organizer of the criminal activity:

| The Court: | I want the record to be clear, I find the defendant is an organizer. I don't consider him a manager or a supervisor; but he's definitely an organizer, proved beyond a reasonable doubt. Forget about a preponderance of the evidence, which is what the standard is. |
|---|---|

(R. 85-2 at 6-7.)

This Court then addressed Martin directly regarding his role in the criminal activity:

> The Court: Mr. Martin, in no uncertain terms, you played a key role in the movement of cocaine in this country. There's a lot of people that are suffering from the use of cocaine. This country has suffered, and this country is at war with the drug dealers.
>
> Unfortunately, you are not at the upper level. I wish you were because I wouldn't hesitate to sentence you to the maximum amount I could. But you're playing a key role, and no matter what they paid you, it wasn't enough because today, just to sentence you to the low end of the Guidelines, which I will, you will pay a significant price, more than 11 years of your life.

(R. 85-2 at 8.)

Martin filed a notice of appeal on May 17, 2004. (R. 66.) On appeal, Martin raised two arguments: (1) that he should not have received the two-level leader/organizer adjustment pursuant to USSG § 3B1.1(c); and (2) that this Court committed plain error by sentencing him under the then-mandatory sentencing guidelines. (R. 116.) On April 27, 2005, following the Supreme Court's decision in *Booker*, the Court of Appeals issued its decision on defendant's appeal. (R. 116.) The Court of Appeals upheld the leader/organizer upward adjustment but remanded pursuant to *Paladino*.

After the Court of Appeals remanded under *Paladino*, this Court afforded both parties the opportunity to file sentencing briefs.

## ANALYSIS

The sentencing of criminal defendants in the federal system is ultimately governed by 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 233-34. That section first requires that "[t]he court shall

impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). The sentence must:

>   (A)   reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B)   afford adequate deterrence to criminal conduct;
>
>   (C)   protect the public from further crimes of the defendant; and
>
>   (D)   provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). In addition to the factors set forth at section 3553(a)(2) quoted above, the court is to consider the following six factors "in determining the particular sentence to be imposed":

>   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   . . .
>
>   (3)   the kinds of sentences available;
>
>   (4)   the kinds of sentences and the sentencing range established under the Sentencing Guidelines, subject to any amendments made to such Guidelines by an act of Congress;
>
>   (5)   any pertinent policy statement issued by the United States Sentencing Commission subject to any amendments made to such policy statement by an act of Congress;
>
>   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Within this general statutory sentencing scheme, the Sentencing Guidelines provide a critical framework because they represent eighteen years' worth of careful consideration of the proper

-6-

sentences for federal offenses. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). In *Mykytiuk*, a thoughtful opinion authored by Judge Wood, the Seventh Circuit Court of Appeals indicated that the Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country and, therefore, held that a sentence properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. *Id.; see also United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006) (reiterating holding in *Mykytiuk* that a sentence falling within the properly calculated Guidelines range is presumed reasonable and that the defendant bears the burden of rebutting the presumption by showing that the sentence is inconsistent with the section 3553(a) factors). This Court's recent survey of sentencing case law in other Circuits indicates similar reliance on the Guidelines. *See United States v. Caputo*, __ F. Supp. 2d __, 2006 WL 2946191 (N.D. Ill. Oct. 16, 2006).

## The Defendant's Initial Sentence Is Reasonable

On remand, Martin does not challenge this Court's application of the Sentencing Guidelines. Instead, he takes a second bite at obtaining a lower, non-Guideline sentence by rearguing all of the mitigating factors: his remorse, his young age, his foreign citizenship and probable deportation, and his lack of criminal history. All of these factors are significant and were properly considered by this Court in its decision to impose a low-end Guideline sentence. Yet, the remaining sentencing factors all justify a serious, Guideline sentence as outlined herein.

## The Seriousness of the Offense

This Court stated repeatedly at the original sentencing proceeding that Martin had played a key role in arranging for the delivery of eighteen kilograms of cocaine. This Court properly deemed this quantity to be significant. The Court expressly notes that the mandatory minimum sentence for

distributing more than five kilograms of cocaine is ten years imprisonment. *See* 21 U.S.C. § 841 (a)(1) and (b)(1)(A)(ii). By comparison, Martin's eleven-year and three-month (or "135 month") sentence represents a low sentence for a quantity of drugs which is more than three times the threshold for a ten-year mandatory sentence. Furthermore, Martin involved himself in controlling the keys for the car where the cocaine was located and, more importantly, in discussions about the sale price for the cocaine. (R. 85-2, Tr. at 5.) Thus, this Court concluded that Martin played a key organizational role in the drug transaction. (*Id.* at 6-8.) These two factors—key organizational role and a large quantity of drugs—convinced this Court to favor a Guidelines range sentence.

### The Need for Adequate Deterrence and Protection of the Public

Furthermore, the need for adequate deterrence and public protection fully justify a sentence of 135 months for Martin. Simply put, this country is losing its war with drugs. Despite Congress's and the Sentencing Commission's long history of imposing significant sentences for large-scale drug dealers, true deterrence remains an elusive goal. Although a long sentence for a drug offense is not always necessary when a defendant plays a minimal role in the offense, this Court strongly believes that long sentences are necessary to deter defendants who play meaningful roles in serious drug offenses. Martin played a meaningful role in this eighteen-kilogram transaction, and, accordingly, his 135-month sentence is appropriate. Our Circuit has expressly noted that harsh penalties may be needed to deter serious drug crimes. *See, e.g., United States v. Wurzinger,* __ F.3d __, 2006 WL 3055954 (7th Cir. Oct. 30, 2006) (262-month top-of-Guideline sentence affirmed as reasonable for key role in conspiracy to manufacture methaphetamine); *United States v. Melendez,* __ F.3d __, 2006 WL 3040749 (7th Cir. Oct. 27, 2006) (midrange 300-month sentence affirmed as reasonable for key role in large marijuana distribution conspiracy).

## CONCLUSION

For all these reasons, even with the additional sentencing discretion afforded by *Booker*, this Court would impose the original sentence. In making this determination, the Court expressly states that it is not relying on any presumption in finding Martin's original sentence reasonable. The nature and circumstances of this serious drug offense and Martin's role in the offense fully justify the sentence imposed. Furthermore, sentencing Martin below the Guideline range would subvert the goals of Congress and the U.S. Sentencing Commission and lead to unwarranted sentencing disparities, which would in turn fail to protect the public. The Clerk is directed to transmit this opinion to the Court of Appeals.

ENTERED

Judge Ruben Castillo
United States District Court

DATED: November 21, 2006